IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DAVID LIPNICKI, NEIL ALBA, DONNA ARMSTRONG and BRIANNA ROGAN, on behalf of themselves and all others similarly situated, | § § § § § | Civil Action No. 3:10-cv-00605 |
| Plaintiffs, | § § | |
| v. | § § § | COLLECTIVE ACTION  (JURY TRIAL) |
| MERITAGE HOMES CORPORATION and MERITAGE HOMES OF TEXAS, LLC | § § § § | |
| Defendants. | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Named plaintiffs David Lipnicki, Neil Alba, Donna Armstrong, and Brianna Rogan and the opt-in plaintiffs who have filed a notice of consent to join this action (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated file this First Amended Complaint against Defendants Meritage Homes Corporation and Meritage Homes of Texas, LLC (collectively, "Defendants" or "Meritage"), and in support thereof would show as follows:

**I. INTRODUCTION**

1.1     Plaintiffs bring this collective action to recover overtime compensation, minimum wages and other wages, liquidated damages, attorney's fees, litigation expenses, costs of court, pre-judgment and post-judgment interest and injunctive relief under the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

1.2     The collective action consists of current and former employees who worked for Defendants or their subsidiaries, who at any time in the three years preceding the filing of this

suit through the present ("relevant time period") were misclassified as exempt and were not paid minimum wages and/or overtime compensation at time and one-half their regular rates of pay for hours they worked over 40 in a work week in violation of the FLSA and whose job duties included performing sales of newly constructed homes from Defendants' sales offices, with the job title of salesperson, sales counselor, sales manager, sales associate, or any other similar title who were paid as commissioned, exempt employees (referred to herein as a "salesperson" or "salespersons").

      1.3    Plaintiffs demand a jury trial.

## II.  PARTIES

**A.**    **PLAINTIFFS**

      2.1    At all relevant times, Plaintiffs were employed by Defendants within the meaning of the FLSA as a salesperson during the relevant time period.  The Notices of Consent for Plaintiffs have previously been filed herein.

**B.**    **DEFENDANTS**

      2.2    Defendant Meritage Homes Corporation has already entered an appearance herein.

      2.3    Defendant Meritage Homes of Texas, LLC has already entered an appearance herein.

      2.4    Each of the Defendants is engaged in interstate commerce with an annual volume of sales of not less than $500,000.

      2.5    At all relevant times to this action, Defendants were the employer of Plaintiffs and all others similarly situated within the meaning of 29 U.S.C. § 203(d) and constitute an "enterprise" engaged in commerce as defined in 29 U.S.C. §§ 203(r), 203(s).

### III. JURISDICTION AND VENUE

3.1     Jurisdiction of this action is conferred on this Court by 29 U.S.C. § 216(b) and by the provisions of 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce."

3.2     Venue is proper in the Southern District of Texas, Galveston Division pursuant to 28 U.S.C. §§ 1391(a)(2) and 1391(b), because among other reasons, Defendants are residents of and are doing business in this district and division; the Named Plaintiffs worked for Defendants in this district and division, including Galveston County, Texas; and a substantial part of the events giving rise to the claim occurred in this district and division, including Galveston County, Texas.

### IV. FACTUAL BACKGROUND

4.1     Meritage Homes is a developer and new home builder with operations throughout the United States. During the relevant time period, Defendants have employed hundreds of individuals throughout the country as salespersons, including Plaintiffs.

4.2     Plaintiffs were paid on a commission-only basis when they worked for Meritage as a salesperson.

4.3     Plaintiffs were <u>not</u> paid a salary when they worked for Meritage as a salesperson.

4.4     Plaintiffs were <u>not</u> paid an hourly rate when they worked for Meritage as a salesperson.

4.5     Plaintiffs were misclassified as "exempt" workers under the FLSA when they worked for Meritage as a salesperson.

4.6     Plaintiffs were falsely classified as exempt for purposes of overtime and were denied overtime compensation and guaranteed minimum wages.

4.7     Plaintiffs were entitled to be paid minimum wages. Plaintiffs should have been paid time and one-half their regular rates of pay for all hours worked over 40 in a work week ("overtime compensation").

4.8     Plaintiffs were <u>not</u> paid overtime compensation or guaranteed minimum wages when they worked for Meritage as a salesperson during the relevant time period.

4.9     In some pay periods during the relevant time period, Plaintiffs worked for Meritage without receiving any commissions.

4.10    Plaintiffs performed "inside" sales work for Meritage.

4.11    As salespersons, Plaintiffs were responsible for selling new homes built by Meritage. Plaintiffs worked from a Meritage model home sales office ("sales office" or "model home sales office") within a community under development. In a typical week, Plaintiffs spent over 90% of their normal workday in the sales office.

4.12    Plaintiffs conducted their day-to-day business operations as a salesperson from a Meritage sales office.

4.13    A Meritage sales office used by its salespersons is a typical business office containing a desk, telephone, computer, printer, internet access, file cabinets, various sales forms and other sales materials, an executive chair and chairs for customers to sit across from the salesperson's desk.

4.14    Plaintiffs were required to report to work at a Meritage sales office where his or her day-to-day business operations as a salesperson were conducted.

4.15    Plaintiffs rarely left the sales office to show prospective home buyers "spec" houses and vacant lots. In the limited instances in which Plaintiffs did so, he or she was typically gone no more than twenty minutes, and generally traveled less than a one to two mile radius

within the development where the sales office was located. On average, Plaintiffs showed prospective home buyers "spec" houses and vacant lots no more than 2 to 3 times per month. There were many weeks during which Plaintiffs never left the sales office to show a prospective home buyers "spec" houses and vacant lots. Often times, Plaintiffs would direct prospective buyers to tour the "spec" houses and lots on their own or with their realtor, rather than accompany them and leave the sales office understaffed or, in some cases, unattended.

4.16   Plaintiffs were discouraged from leaving the sales office. On those rare occasions that they did leave the sales office, they were required to return as quickly as possible, which was generally twenty minutes or less.

4.17   Being absent from the sales office could result in discipline of a salesperson, including termination.

4.18   In some work weeks during the relevant time period, Plaintiffs worked more than 40 hours per work week while working as a salesperson.

4.19   During the relevant time period, Meritage sales office were open at least 9 hours each day Monday through Saturday and at least 7 hours on Sunday.

4.20   Plaintiffs were required to work 5 to 7 days each week, arrive at least 15-30 minutes before opening and stay late until the last customer left, and usually work through lunch.

4.21   Plaintiffs rarely visited local real estate agents and brokers to market Meritage's communities. On the very rare occasion that Plaintiffs might have visited a local real estate agent or broker to market a Meritage community, no customers or potential buyers were seen on those rare visits, and no sales were made during those visits.

4.22   Plaintiffs' marketing activities with real estate agents and brokers were conducted primarily by email and telephone from the sales office.

4.23    During the relevant time period, Meritage held marketing events at the sales offices to which real estate agents and brokers were invited. Salespersons were required to attend these marketing events.

4.24    As a salesperson, Plaintiffs performed a great deal of paper work in the sales office each day.

4.25    As a salesperson, Plaintiffs spent several hours each day on the telephone in the sales office.

4.26    Once a home is under contract, Meritage's construction managers handle the construction process and walk-thru's with the home buyers.

4.27    Plaintiffs were required to "shop the competition," which involved becoming familiar with the available homes and home prices of other competitor builders in the area.

4.28    "Shopping the competition" did not require that the salesperson leave the sales office.

4.29    Plaintiffs were able to research the competition—*i.e.* the homes of other builders—through internet research and by telephone calls to salespersons for other builders.

4.30    All contracts for sale of new homes that Plaintiffs obtained were entered into in the sales office.

4.31    All of the critical or indispensible components of Plaintiffs' overall sales activities took place within the model home sales office.

4.32    During the relevant time period, a critical component of selling homes to Meritage's buyers was to demonstrate the model home to the potential buyer.

4.33    Meritage spends hundreds of thousands of dollars in developing its model homes, which also act as Meritage sales offices. The visual inspection of the model home and the

demonstration of the various upgrades that Meritage offers is a critical sales tool. The model home is an especially effective selling tool because it contains many upgrades and a professional décor with expensive furnishing and drapery.

4.34   Plaintiffs were trained to demonstrate the features of the model home to potential customers. The demonstration of the model home takes place in the model home sales office.

4.35   Plaintiffs were provided with a layout in the sales offices showing the location of each available lot and home within the community, as well as the location of the other amenities in the community, such as the community pool. Plaintiffs were trained and required to use this layout with potential customers in the sales office to explain the location of any available home or lot within the community, as well as any amenities near the available home or lot.

4.36   In the sales offices, Plaintiffs were provided with the floor plans and pricing information of all available homes in the community in the sales offices. Plaintiffs were trained and required to provide these floor plans and pricing information to potential customers in the sales office where this material was kept.

4.37   Plaintiffs were also required to attend sales training programs offered by Meritage.

4.38   During the relevant time period, sales training programs were held at the sales offices.

4.39   Plaintiffs spent time handling customer service and warranty complaints unrelated to their own sales or solicitations.

4.40   Plaintiffs typically spent at least 4 or 5 hours per week performing additional work that was unrelated to their own sales or solicitations.

## V.  COLLECTIVE ACTION ALLEGATIONS

5.1     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

5.2     Defendants' business operations, and the job duties, working conditions, wages and compensation of Plaintiffs are substantially similar, if not identical, at all of Defendants' locations throughout the country.

5.3     Other employees have been victimized by this pattern, practice, and policy of the Defendants that is in violation of the FLSA.  Plaintiffs are aware that the illegal practices and policies of Defendants have been imposed on other workers.

5.4     The collective action consists of current and former individuals who worked for Defendants or their subsidiaries or divisions, who during the relevant time period were misclassified as exempt and were not paid minimum wages and/or overtime compensation at time and one half for hours they worked over 40 in a week in violation of the FLSA and whose job duties included performing sales of newly constructed homes from a sales office.

5.5     Plaintiffs shared common job duties and responsibilities as salespersons.  Thus, Plaintiffs' experiences are typical of the experience of Defendants' other salespersons.

5.6     Plaintiffs file this case as an "opt-in" collective action as specifically allowed by 29 U.S.C. §216(b).

5.7     Plaintiffs bring these claims on their behalf and on behalf of all others similarly situated salespersons who have not been fully compensated for all work performed, time spent, and activities conducted for the benefit of Defendants.

5.8     Plaintiffs frequently performed work unrelated to sales of newly constructed homes for which they were not compensated.

5.9     Plaintiffs request that Defendants fully identify all others similarly situated in order that proper notice of their right to consent to participation in this collective action may be distributed, including immediately providing the name, last known address, telephone number dates of employment, and job title(s) of all those similarly situated so that notice may be sent to those persons immediately.

5.10    Plaintiffs seek to represent those similarly situated who have provided consent in writing to join this action as required by 29 U.S.C. § 216(b).

5.11    Those individuals who choose to opt in will be listed on subsequent pleadings and copies of the written consents to sue will be incorporated herein by reference.

5.12    Plaintiffs will fairly and adequately represent and protect the interests of those who are similarly situated.

## VI.  COUNT 1—VIOLATIONS OF THE FLSA

6.1     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

6.2     Plaintiffs are lawfully non-exempt employees and were improperly classified as exempt employees.

6.3     Defendants have violated the FLSA by failing to pay Plaintiffs and all other similarly situated salespersons minimum wages and/or overtime compensation at a rate of one and one half for all hours worked in excess of 40 hours per week.

6.4     Defendants have not made a good faith effort to comply with the FLSA.

6.5     Each Defendant's conduct was willful within the meaning of 29 U.S.C. § 255(a).

6.6     In further violation of the FLSA, Defendants have failed to maintain accurate employee pay records, including the number of hours worked per work week, by Plaintiffs and by all other similarly situated salespersons.

6.7     Defendants deliberately misclassified Plaintiffs and all other similarly situated salespersons as exempt employees to avoid paying them overtime compensation.

6.8     No exemption excused the Defendants from paying Plaintiffs and all other similarly situated salespersons minimum wages and/or overtime compensation.

6.9     Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice regarding overtime compensation owed to Plaintiffs and to all other similarly situated salespersons.

6.10    Defendants knowingly failed to pay overtime to Plaintiffs in violation of the FLSA.

6.11    Defendants' conduct has been willful and in bad faith.  Plaintiffs and all others similarly situated are entitled to liquidated damages for such conduct.

6.12    Defendants' practice is to be deliberately indifferent to violations of overtime and/or minimum wage requirements.

## VII. JURY DEMAND

7.1     Plaintiffs hereby demand a trial by jury.

## PRAYER

WHEREFORE Plaintiffs and all those similarly situated to them who have or will opt into this action, respectfully pray that this Court follow the certification procedures of § 216 of the Fair Labors Standards Act and certify a collective action, and that subsequent thereto Plaintiffs and all others who opt-in to this action recover the following:

a. an order preliminarily and permanently restraining and enjoining Defendants from engaging in the aforementioned pay violations;

b. damages and restitution for all unpaid wages (including fringe benefits and bonuses), unpaid overtime compensation (at time and one-half), and unpaid minimum wages and other injuries, as provided by the FLSA;

c. liquidated damages, as provided by the FLSA, equal to the sum of the amount of wages and overtime compensation that were not properly paid;

d. all applicable penalties for the violations set forth herein;

e. an award of reasonable attorney's fees, expenses, expert fees and costs incurred in vindicating the rights of Plaintiffs and all those similarly situated;

f. an award of pre-judgment and post-judgment interest at the highest rate permitted by law; and

g. such other and further relief, at law or in equity, as this Court deems just and appropriate.

By: /s/ Rhonda H. Wills
Rhonda H. Wills
ATTORNEY-IN-CHARGE
State Bar No. 00791943
S.D. Id. No. 20699
WILLS LAW FIRM
1776 Yorktown, Suite 600
Houston, Texas  77056
Telephone:  (713) 528-4455
Facsimile:  (713) 528-2047

/s/ James M. Douglas
James M. Douglas
TEXAS SOUTHERN UNIVERSITY
State Bar No. 06044000
3100 Cleburne Street, Suite 115
Houston, Texas 77004
Telephone: (713) 313-1122
Facsimile:  (713) 313-7968

/s/ Melvin Houston
Melvin Houston
MELVIN HOUSTON & ASSOCIATES, P.C.
State Bar No. 00793987
1776 Yorktown, Suite 600

                                          Houston, Texas 77056
                                          Telephone: (713) 212-0600
                                          Facsimile: (713) 212-0290

                                            **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on **November 21, 2011**, I electronically filed the foregoing document with the clerk of the court for the Southern District of Texas using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented to accept this Notice as service of this document by electronic means:

| | | |
|---|---|---|
| Scott Robert McLaughlin<br>JACKSON WALKER, L.L.P.<br>1401 McKinney<br>Suite 1900<br>Houston, TX 77010<br>O: (713)752-4301<br>F: (713) 752-4221<br>Email: smclaughlin@jw.com | Paula Denney<br>JACKSON WALKER, LLP<br>1401 McKinney Street, Suite 1900<br>Houston, TX 77010<br>O: 713)752-4200<br>F: 713/752-4221<br>Email: pdenney@jw.com | D. Elaine Conway<br>JACKSON WALKER, LLP<br>1401 McKinney Street<br>Suite 1900<br>Houston, TX 77010<br>O: (713) 752-4510<br>F: (713) 754-6704<br>Email: econway@jw.com |

Chevazz G. Brown
JACKSON WALKER, LLP
1401 McKinney Street
 Suite 1900
Houston, TX 77010
O: 713)752-4200
F: 713/752-4221
Email: cgbrown@jw.com

**ATTORNEYS FOR DEFENDANT**

                                            <u>/s/ Rhonda H. Wills</u>
                                            Rhonda H. Wills