IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DAVID LIPNICKI, *et al.*, | § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No.  3:10-cv-00605 |
| v. | § § | |
| MERITAGE HOMES | § § | FLSA Collective Action |
| CORPORATION, *et al.* | § § | (Jury Demanded) |
| Defendants. | § § | |

## PLAINTIFFS' PROPOSED TRIAL PLAN

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs and opt-in plaintiffs, on behalf of themselves and all other similarly situated individuals (collectively, "Plaintiffs"), respectfully file this Proposed Trial Plan, and show as follows:

### I.   BACKGROUND

**A.   Factual Background.**

This is a Fair Labor Standards Act ("FLSA") collective action against Meritage Homes Corporation and Meritage Homes of Texas, LLC ("Defendants" or "Meritage"), brought by onsite salespersons, referred to by Meritage as "salespersons," "sales associates" or even as "commissioned sales managers,"[1]

---

[1] Meritage used the job title salesperson and sales manager interchangeably to refer to commissioned new home sales personnel who sold new homes from Meritage Model Home sales offices.   Though sometimes referred to as

(hereinafter, "Model Home Sales Associates"), who were assigned to a Meritage model home sales office for a particular community and who sold newly constructed homes and mortgages. Meritage misclassified Model Home Sales Associates as *exempt* commission-only "outside salesmen," and denied them overtime and minimum wages, while at the same time classifying sales assistants and temporary contract salespersons, individuals who performed the same job duties, as "non-exempt" employees.

It is undisputed that Meritage's salespersons worked more than 40 hours per work week without overtime compensation, and that there were weeks when the Model Home Sales Associates were not paid minimum wages. Meritage argues that it properly classified the Model Home Sales Associate position as "exempt" under the outside sales exemption.

**B.     Procedural Background.**

This case was originally filed on December 22, 2010 as a collective action under the FLSA.[2] The matter was conditionally certified and notice sent to potential collective action members without opposition by Meritage.[3] Following notice, more than 100 opt-in plaintiffs joined this matter.

---

"sales managers," it is undisputed that these individuals were not managerial or supervisory employees. Throughout this Motion, "sales manager," "salesperson" and "sales associates" will be used interchangeably.
   [2] Plaintiffs' Original Complaint [Doc. 1].
   [3] Docs. 25, 42.

Following extensive discovery, both parties filed motions for summary judgment, which have been ruled on in this matter. Plaintiffs' and Defendants' cross-motions for summary judgment on the outside sales exemption were denied.[4] The Court granted Defendants' Motion for Summary Judgment Regarding California Plaintiffs resulting in the dismissal of the claims of those opt-in plaintiffs who worked in California.[5] With respect Defendants' Motion for Partial Summary Judgment on Statute of Limitations and Section 260 Good Faith Defense, the Court granted in part and denied in part the motion. Specifically, the Court granted the motion on the willfulness issue and held that a two-year statute of limitations will apply to the claims in this case.[6] The Court denied Meritage's motion with respect to the good faith defense stating that this is "a matter for the court to decide" after the conclusion of trial.[7]

After the Court's rulings on summary judgment and the voluntary dismissals in the case by other plaintiffs and opt-in plaintiffs,[8] there are **104** plaintiffs and opt-in plaintiffs that remain for trial. The three named/representative plaintiffs are David Lipnicki, Donna Armstrong and Neil Alba. By agreement of the parties, all three named plaintiffs were deposed and seven randomly selected opt-in plaintiffs from

---

[4] Memorandum and Order [Doc. 180].
[5] *Id.* at 29.
[6] *Id.* at 26.
[7] Id. at 29.
[8] The claims of Brianna Rogan, David Wilhelm and Debra Worth were voluntarily dismissed. [Docs. 135-2, 138]

different geographic regions were also deposed for a total of 10 plaintiff and opt-in plaintiff depositions. Plaintiffs deposed 8 of Defendants' witnesses.

The Court has not yet ruled on Defendants' Motion to Decertify Collective Action [Doc. 187]. This matter has been set for a two-week jury trial beginning on June 16, 2014 [Doc. 188].

## II. PROPOSED TRIAL PLAN

Plaintiffs propose an efficient, simple and cost-effective trial plan consisting of a single trial on liability and damages using representative testimony. In this trial, the jurors would hear testimony from an anticipated maximum of a total 25-30 witnesses—including the 10 plaintiffs and opt-in plaintiffs who were deposed. This estimate is based on the witnesses that have been disclosed by Plaintiffs and Defendants. There have been a total of 18 witnesses in this matter that have been deposed with videotaped depositions.

Plaintiffs intend to generally rely on the following types of evidence: testimony from the three named plaintiffs; testimony from the deposed opt-in plaintiffs who were randomly selected by agreement; testimony from Meritage's corporate designees under Fed. R. Civ. P. 30(b)(6); and testimony from other Meritage former and current executives, managers and supervisors. The plaintiffs and opt-in plaintiffs that were deposed are geographically diverse. The three named plaintiffs all worked in Houston. The seven opt-in plaintiffs who were deposed were

4

randomly selected by agreement based on each geographic region where Meritage employed Model Home Sales Associates.

Trial of this matter should last no more than two weeks, with at least half of the witnesses appearing by deposition. This case boils down to a very simple jury trial on two questions, one of which will fully resolve liability and the other damages:

1. Were Plaintiffs exempt under the outside sales exemption? (liability); and
2. How many overtime hours did Plaintiffs work? (damages)

These two issues may be determined in a single trial based on representative testimony.

### A.  Representative Testimony is Commonly Used.

Courts commonly allow representative employees to prove liability and damages with respect to all employees. *See Reich v. Southern New England Tel. Corp.,* 121 F.3d 58, 67 (2d Cir. 1997) (only 39 out of 1500 employees testified noting that "the weight to be accorded evidence is a function not of quantity but of quality"); *Reich v. Gateway Press, Inc.*, F.3d 685, 701-702 (3d Cir. 1994) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) (overruled by statute on other grounds) (8 out of 300 employees testified with the court noting that "[c]ourts commonly allow representative employees to prove violations with respect to all employees"); *Donovan v. Burger King Corp.*, 672 F.2d 221, 225 (1st Cir. 1982) (live testimony from only 6 out of 246 employees); *Stillman v. Staples, Inc.*, 2009 WL

1437817, *14 (D.N.J. May 15, 2009) (misclassification case in which only 13 of 342 sales managers testified at trial); *Takacs v. Hahn Auto.*, 1999 WL 33127976, at *3 (S.D. Ohio June 25, 1999) (granting the plaintiffs' request to prove damages through representative testimony consisting of 4 to 6 plaintiffs).

Efficiency and conservation of judicial resources militate in favor of a single trial in this matter using representative testimony. Otherwise, there will be multiple trials with the same witnesses, the same documents and the same arguments. Accordingly, the Court should adhere to the well-established principal that FLSA cases are typically tried on a representative basis.

**B. The Outside Sales Exemption May Be Determined with Representative Testimony.**

The Court has noted that the standard to be applied with respect to the outside sales exemption is whether "virtually all of the indispensable components of the sales efforts are concentrated in the outside period." [9] As noted by the Court and the U.S. Department of Labor ("DOL"), the <u>amount of time</u> that an employee spends outside of the employer's place of business is <u>not determinative</u>.[10]

The jury will need to assess (1) what the "critical or indispensable components of the sales effort" are with respect to selling Meritage's new homes and mortgages,

---

[9] Memorandum and Order (2/13/14) at 17 [Doc. 180] (emphasis added).

[10] Memorandum and Order at 17; FLSA 2007-2, at *4, n.3 ("It is the nature of the time spent outside the model home, rather than the amount of time, that drives our conclusion.").

and (2) whether "virtually all" of those "indispensable activities" are done in time spent outside Meritage's places of business—however much or little time that is. As the DOL noted, "it is the nature of the time spent outside of the model home, rather than the amount of time, that drives our conclusion."

Undoubtedly the sales activities performed by Meritage sales associates to sell a new home and mortgage were very similar, using the same or a very similar sales process and sales tools, as well as working in a model home with the same or very similar equipment in the sales office. The jury will determine which activities are "critical" or "indispensable" to the sales effort and where such activities take place. The amount of time that a Model Home Sales Associate spends conducting these activities is not determinative, only the nature of the activity is at issue.

**C.      Damages May Be Determined Using Representative Testimony.**

Damages may be determined on a collective basis at trial without the need for testimony from each individual opt-in plaintiff. *See McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988); *Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 781 (6th Cir. 1995) ("The testimony of representative employees may be the basis for an award of back wages to non-testifying employees); *Donovan v. Bel-Loc Finer*, 780 F.2d 1113, 1116 (4th Cir. 1985) (recognizing that requiring each plaintiff to testify would thwart the purposes of the type of representative testimony contemplated by *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)).

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) is the leading case on the proof of damages in a FLSA overtime case in which the employer has violated its legal obligation to maintain accurate time records. In *Anderson*, the Supreme Court opined:

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, ***the court may then award damages to the employee, even though the result be only approximate***.

*Id.* at 687–88 (emphasis added). The Supreme Court found the testimony of a mere 8 of the approximately 300 employees, or 2.7% of the group, was sufficient in *Anderson* to establish damages on a collective basis under the FLSA. *Id.* at 690-93.

Based on *Anderson,* circuit courts, including the Fifth Circuit, have uniformly held that damages in a FLSA overtime case may be established by testimony from a representative group of plaintiffs without requiring each plaintiff to testify. *See, e.g.,*

8

*Albanil v. Coast 2 Coast, Inc.*, 444 Fed.Appx. 788, 806 (5th Cir. 2011) ("This court and other circuit courts of appeals have recognized that the [*Anderson*] standard allows plaintiffs to establish a prima facie case for non-testifying employees based on the "fairly representational" testimony of other employees.") (citing *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973)) (holding that the plaintiffs established a prima facie case that all plaintiffs worked unreported hours through representative testimony); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) ("In meeting the burden under [*Anderson*] the Secretary need not present testimony from each underpaid employee; rather, it is well-established that the Secretary may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA."); *Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 781 (6th Cir. 1995) ("The testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees."); *Reich v. S. Md. Hosp., Inc.*, 43 F.3d 949, 951 (4th Cir. 1995) ("[T]he Secretary can present testimony from representative employees as part of his proof of the prima facie case."); *Secretary of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991) (recognizing that "the Secretary can rely on testimony and evidence from representative employees to meet the initial burden of proof requirement."); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir. 1991) ("The testimony and evidence of representative employees may establish

9

prima facie proof of a pattern and practice of FLSA violations."); *Brock v. Norman's Country Mkt., Inc.*, 835 F.2d 823, 828 (11th Cir. 1998) ("[I]t is clear that each employee need not testify in order to make out a prima facie case of the number of hours worked as a matter of 'just and reasonable inference.'").

Here, Meritage has admitted that Plaintiffs worked over 40 hours per workweek without any overtime compensation.[11]  It is further undisputed that Meritage did not maintain any time records with respect to the hours worked by Plaintiffs.[12]  Accordingly, under *Anderson* and its progeny, Plaintiffs may prove damages through representative testimony.

The damages calculation has components involving the hours worked, the regular rate of pay and the multiplier.  Determining the average number of hours worked is ideal for collective treatment.  Plaintiffs do not have the burden of proving the precise extent of their unpaid work, but instead may use approximations. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

### III. PROPOSED JURY INTERROGATORIES

**A. Liability.**

The liability issues, including the single asserted exemption—the outside sales exemption—can be handled on a representative basis.  While Plaintiffs reserve

---

[11] Harding Dep. at p. 214, ll. 2-4.
[12] Harding Dep. at p. 33, ll. 6-16.

10

the right to make further modifications, the verdict form relating to liability could appear in this fashion:

1. Did Plaintiffs prove by a preponderance of the evidence that the Model Home Sales Associates worked in excess of 40 hours per work week and did not receive overtime compensation for any hours worked in excess of 40 per work week?

2. Did Plaintiffs prove by a preponderance of the evidence that the Model Home Sales Associates did not receive minimum wages in any given work week?

3. Did Meritage prove by a preponderance of the evidence that the Model Home Sales Associates 'plainly and unmistakably' qualify for the outside sales exemption?

Likewise, by example the jury instruction on the outside sales exemption could include the following, subject to modifications:

> There are two required elements for the outside sales exemption. First, the employee must have a primary duty of making sales. Second, the employee must be "customarily and regularly" engaged away from the employer's place or places of business in performing sales.[13]
>
> Soliciting business through a dealer or merchant to offer a product or service to a customer is not a sale within the meaning of FLSA.[14]
>
> The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home.[15] Outside sales employees may perform promotional work as an exempt sales activity if it is actually performed incidental to

---

[13] 29 C.F.R. § 541.500.
[14] 29 U.S.C. § 203(k).
[15] 29 C.F.R. § 541.502.

and in conjunction with an employee's own outside sales or solicitations.[16]

The "employer's place or places of business" includes any fixed site, whether home or office used by a salesperson as a headquarters or for telephonic solicitation, even though the employer is not in any formal sense the owner or tenant of the property.[17]

In order to be "customarily and regularly" engaged away from the employer's place or places of business, virtually all of the "indispensable components" of the sales effort must be concentrated in the outside period.[18] It is the nature of the time spent outside of the employer's place of business, rather than the amount of time that is determinative. The "indispensable components" include all of the activities that are critical to the overall sales effort.

**B.     Damages.**

Damages may also be handled on a representative basis. While Plaintiffs reserve the right to make modifications, an example of the how the verdict form relating to damages could appear is as follows:

> 1.     Overtime Hours Worked by Testifying Plaintiffs:
>
> Please determine the average number of overtime hours worked per week by each of the following Named Plaintiffs, and remember that any hours worked over 40 hours per work week are overtime hours.
>
> David Lipnicki:        _____ hours
>
> Donna Armstrong: _____ hours
>
> Neil Alba:                _____ hours

---

[16] *Id.*
[17] *Id.*
[18] FLSA2007-2, at *4, n.3.

2. Overtime Hours Worked by Additional Plaintiffs:

Please determine the average number of overtime hours worked per week by the Represented Plaintiffs who are joined in this matter and represented by the Named Plaintiffs, David Lipnicki, Donna Armstrong, and Neil Alba.

Average Hours of Overtime Worked
Each Week by Represented Plaintiffs:     _____

Following a jury finding regarding the number of hours, the Court could then instruct the parties to employ a third-party or appoint a special master to mechanically calculate the damages based on the jury's determination of the number of hours using the appropriate multiplier as determined by the Court. Those basic calculations would then be included in the judgment entered by the Court based on the jury's findings.

### IV.     EXAMPLE JURY CHARGE

By way of example, Plaintiffs attach hereto the following proposed jury charge used in an FLSA collective action matter:

- Notice of Proposed Jury Charge and Verdict Form, *Henry v. Quicken Loan Inc.*, C.A. No. 04-CV-40346 (E.D. Mich. May 4, 2009) (Doc. 575) (Ex. 1);

### V.     CONCLUSION

This proposed trial plan presents the most efficient and just method to adjudicate Plaintiffs' claims. Allowing Plaintiffs to proceed collectively will promote the remedial nature of the FLSA, as well as the congressional intent of 29 U.S.C. § 216(b). *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)

13

(citing congressional intent to "vindicate right by the pooling of resources"); *Reich v. Circle C. Invs. Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (recognizing FLSA's remedial purpose).  To decertify this matter and require each opt-in plaintiff to incur the costs of bringing an individual lawsuit for their FLSA claims would be manifestly unjust and unfair, as well as judicially inefficient.

For all the foregoing reasons, Plaintiffs respectfully request that the Court refuse to decertify this matter and adopt Plaintiffs' proposed trial plan and proceed with a single trial on all issues commencing on June 16, 2014.

Dated:  May 23, 2014

>Respectfully submitted,
>
>>*/s/ Rhonda H. Wills*
>>Rhonda H. Wills
>>Attorney-in-Charge
>>State Bar No. 00791943
>>Southern District I.D. No. 20699
>>Genevieve B. Estrada
>>State Bar No. 24087481
>>Southern District I.D. No. 2158369
>>WILLS LAW FIRM, PLLC
>>1776 Yorktown, Suite 570
>>Houston, Texas  77056
>>Telephone: (713) 528-4455
>>Facsimile: (713) 528-2047

        */s/ John M. Padilla*
        John M. Padilla
        State Bar No. 00791395
        Southern District I.D. No. 19236
        J. Moises Cedillos
        State Bar No. 24080828
        Southern District I.D. No. 1531827
        PADILLA & RODRIGUEZ, L.L.P.
        1776 Yorktown, Suite 110
        Houston, Texas 77056
        Telephone: (832) 740-4300
        Facsimile: (832) 740-4301

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    I, the undersigned counsel, hereby certify that the foregoing document has been electronically filed with the Clerk of the Court by using the CM/ECF system, which will in turn send a notice of the electronic filing to all counsel of record, on this 23rd day of May, 2014.

        /s/ Rhonda H. Wills
        Rhonda H. Wills